# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| MIGUEL QUINONES, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 5:04-1325** |
| | ) | |
| THOMAS McBRIDE, Warden, | ) | |
| Mount Olive Correctional Complex, | ) | |
| | ) | |
| **Defendant.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

On December 20, 2004, Plaintiff, an Inmate at Mount Olive Correctional Complex [MOCC],

filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Document No. 1.) and a

Motion for Injunctive Relief (Document No. 2.).[1] On April 11, 2005, Plaintiff filed an Amended

Motion for Preliminary Injunctive Relief. (Document No. 23.) The undersigned addresses the merits

of Plaintiff's Motion for Injunctive Relief (Document No. 2.) and Amended Motion for Preliminary

Injunctive Relief (Document No. 23.) in this Proposed Findings and Recommendation and concludes

that Plaintiff's Motions for Injunctive Relief (Document Nos. 2 and 23.) must be denied.

### FACTUAL BACKGROUND

In his Petition (Document No. 1.), Plaintiff claims that Defendant has violated his First,

Eighth and Fourteenth Amendment rights and several state code provisions. Respecting his claim

that Defendant has violated his First Amendment rights, Plaintiff states as follows:

---

[1]Because Petitioner is acting *pro se*, the documents which he has filed in this case are
held to a less stringent standard than if they were prepared by a lawyer, and therefore they are
construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652
(1972).

> Respondents have in place a law library system which was deemed unlawful. Thus, they have denied this petitioner meaningful, effective access to Courts. They have denied access to Family Court hearings. They have also disallowed this petitioner to receive books and mail.

Respecting his claim that Defendant has violated his Eighth Amendment rights, Plaintiff states as follows:

> Respondents have subjected this petitioner to atypical hardships in their unlawful placement of this petitioner in AD-SEG, The program in effect is the source of this atypical hardship where as it denies privilege, programs and rehabilitative services and administers punishment outside of the 325.00 policy of discipline, which no prisoner is subjected to anywhere else in the DOC.

Respecting his claim that Defendant has violated his Fourteenth Amendment rights, Plaintiff states as follows:

> Respondents have AD-SEG'd this petitioner and have refused to afford him due process of law in that they have refused to give him hearings which determine if he is in fact a risk to the institution. In said hearings by law petitioner is entitled to the alleged grounds for his continued segregation, rights to present witnesses and cross examine, right to have representation, right to present evidence. Petitioner has been AD-SEG'd as a form of punishment where as he poses no threat by being on mainline population. The reasons of his AD-SEG are in violation of W.V. statute which give petitioner liberty interests and property entitlements.

In his Motion for Injunctive Relief (Document No. 2.), Plaintiff requests that he "be transferred to another secured facility pending the outcome of these proceedings to protect him from retaliation by the defendants which has been an ongoing issue." Plaintiff states as follows:

> The plaintiff has been subjected to numerous retaliations as a result of his civil actions being filed against the administration of Mt. Olive Correctional Complex in violation of Federal Law 18 U.S.C.A. § 241 and 242. This habeas corpus action resulted from a retaliation from a previous state habeas action where this plaintiff was awarded relief and released from segregation. A 1983 action followed which was dismissed due to failure to exhaust. A few months later defendants retaliated by using the original habeas action, which was ordered to be expunged by the court, was used to segregate this plaintiff administratively.

It appears that Plaintiff is claiming that Defendant is retaliating against him by holding him in

2

segregation because he filed a *habeas* action in the Circuit Court of Fayette County which resulted in the granting of a writ of *habeas corpus* in 2002. The record indicates that Plaintiff was charged with and found guilty of committing an assault and battery while at MOCC and placed in punitive segregation. Plaintiff filed a *habeas corpus* action in the Circuit Court of Fayette County in 2002, Quinones v. Coleman, Civil Action No. 02-C-28. By Order entered on June 25, 2002, Circuit Judge Vickers concluded that Plaintiff's procedural and substantive due process rights had been violated in the administrative adjudication of the assault and battery charges and issued a writ of *habeas corpus* requiring that Plaintiff be released from punitive segregation, that the record of the assault and battery charges be expunged and that Plaintiff be restored to his pre-disciplinary hearing status and privileges.

Plaintiff filed an Amended Petition for Writ of Habeas Corpus Ad Subjiciendum on December 23, 2004. (Document No. 4.) Plaintiff states the factual basis for his claims more specifically in this document. He states that Circuit Judge Vickers granted him *habeas* relief in 2002 and ordered expungement of the record of certain disciplinary proceedings at MOCC. As a consequence of Judge Vickers' decision, Plaintiff was released from segregation. On November 21, 2002, Plaintiff filed a § 1983 action in this Court, Quinones v. Rubenstein, *et al.*, 5:02-1365. In July, 2003, Plaintiff learned during an interrogation by MOCC administrators that they had not expunged the record of the disciplinary proceedings as Judge Vickers ordered. On September 18, 2003, this Court dismissed Plaintiff's § 1983 case for failure to exhaust administrative remedies. Plaintiff states that on February 2, 2004, he was again "placed in punitive segregation for 60 days for the charge of 'felony' and was given an additional 30 days punitive segregation for the charge of 'forgery' whereas [he] was found guilty of both charges in regard to documents which were allegedly to have

3

been forged by [him] which excused him from paying the filing fee of the above mentioned civil action."[2] (Document No. 4, p. 3.) Plaintiff states on March 18, 2004, the Administrative Segregation Review Board determined that he should be released from segregation on April 2, 2004, after serving 60 days there. On April 2, 2004, Plaintiff was informed that he was placed on "detention status and would not be released." (Id.) Plaintiff states that on April 6, 2004, Correctional Officer Joseph Coy, whose job it is to investigate rules violations at MOCC, reported that he suspected Plaintiff of committing further rules violations. As a consequence, Plaintiff was held in administrative segregation and placed in the Quality of Life Program. (Id., p. 4.) Plaintiff states that he was not in attendance at the hearing when Officer Coy gave his report and was not charged with further rules violations. Plaintiff reiterates his claims that he has been denied due process and access to the Courts and has been subject to cruel and unusual punishment. For relief, he requests, among other things, his "immediate release from unlawful restraints, return to pre-segregation status and privileges and immediate transfer to a lesser secure facility." (Id., p. 15.)

On April 4, 2005, Defendant filed a Response to Plaintiff's Petition for Writ of Habeas Corpus (Document No. 17.) and a Motion to Dismiss and Response to Plaintiff's Motion for Injunctive Relief and Memorandum in Support (Document Nos. 18 and 19). Defendant asserts that Plaintiff "alleges issues pertaining to conditions of confinement." (Document No. 19, p. 1.) Defendant contends that "a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 is not a proper means by which to challenge conditions of confinement." (Id., p. 3.) Rather, Defendant

---

[2] It appears that Plaintiff was found to have presented an Order to prison officials bearing Chief Judge Faber's signature providing that Plaintiff had requested voluntary dismissal and was not responsible for payment of the filing fee in Quinones v. Rubenstein, et al., 5:02-1365, when Chief Judge Faber had not entered it.

indicates that Plaintiff's action is properly considered a civil rights action.[3] Respecting Plaintiff's

claims of constitutional violations, Defendant states that Plaintiff's placement in segregation does

not invoke due process or Eighth Amendment concerns: Plaintiff's placement in administrative

segregation does not violate the Eighth Amendment; Plaintiff's allegations do not support his claims

of interference with his right of access to the Courts and retaliation; and Plaintiff is not entitled to

injunctive relief. (Id., pp. 4 - 12.) Defendant states that since Plaintiff was granted relief upon his

request for *habeas corpus* in Fayette County in 2002, and his placement back in administrative

segregation in April, 2004, he was charged with numerous additional rules violations.[4] Respecting

Plaintiff's Motion for injunctive relief, Defendant asserts that the Court must observe the

---

[3] The undersigned finds that Plaintiff has attempted to raise claims under 28 U.S.C. § 2254 in this case which can only be considered under 42 U.S.C. § 1983. The undersigned granted Plaintiff's Application to Proceed *in forma pauperis* assuming that Plaintiff's claims could be considered under § 2254 thus requiring the payment of a five dollar filing fee. Seeing now that the Plaintiff's claims must be considered under § 1983, the undersigned will prepare an Amended Order granting Plaintiff's Motion to Proceed *in forma pauperis* and requiring his payment of the applicable $150 filing fee.

[4] Defendant has provided copies of documents charging Plaintiff with rules violations as Exhibit 5 in the Appendix of Exhibits accompanying Defendant's Motion to Dismiss and Memorandum in Support. It appears that between 2002 and 2004 Plaintiff was ordered confined in punitive segregation several times for committing rules violations. In January, 2004, Plaintiff was ordered confined in punitive segregation for committing a felony and forgery for a period of 60 days and 30 days respectively to run consecutively. It appears that Plaintiff's term in punitive segregation for these rules violations was to begin on February 2 and end on May 2, 2004. Exhibit 6 contains copies of documents indicating that in early April, 2004, the Administrative Segregation Committee determined that Plaintiff's custody status should be changed from punitive to administrative segregation – Quality of Life Program. The first document in Exhibit 6 is a Memorandum dated April 7, 2004, from the Warden regarding "Administrative Segregation Hearing/Review Decision" notifying Plaintiff that the Warden approved the Administrative Segregation Committee's recommendation that Plaintiff's status be changed "from detention to Ad. Seg. QOL." The second document in Exhibit 6 is an "Administrative Segregation Hearing/Review Recommendation" dated April 6, 2004, indicating the recommendation that Plaintiff's status be changed from detention to Ad. Seg. QOL. The undersigned notes that this document bears the signatures Administrative Segregation Committee members and Plaintiff.

requirements of 18 U.S.C. § 3626[5] in considering the issue; Plaintiff is in administrative segregation in the Quality of Life Program[6] and apparently making satisfactory progress; and Plaintiff has not exhausted his administrative remedies. (Id., pp. 11 -12.)

On April 8, 2005, the undersigned filed an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of his right to file a response to Defendant's Motion to Dismiss. (Document no. 20.)

On April 11, 2005, Plaintiff filed an Amended Motion for Preliminary Injunctive Relief. (Document No. 23.) Plaintiff requests that the Court order that he be permanently transferred to another institution. Plaintiff states, among other things, that "[h]e is not contesting the conditions of confinement; he is contesting the legality of the process used to confine him."

---

[5] 18 U.S.C. § 3626(a)(1)(A) provides as follows:

Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

[6] Plaintiff has submitted a copy of MOCC's Operational Procedure 3.36 concerning Conditions of Confinement and Quality of Life. (Document No. 7.) This document states as follows:

It is Mount Olive Correctional Complex (MOCC) policy to maintain a mechanism that provides for the management of the administrative segregation inmate population with a stratified incentive quality of life program based on an increased level of privileges for demonstrated appropriate inmate behavior and program compliance. This Operational Procedure governs the operation for the supervision of inmates assigned to Administrative Segregation and established operational procedures relevant to the security and programmatic needs of the institution during normal day-to-day activities.

On April 12, 2005, Plaintiff filed a Reply to Defendant's Response to his Motion for Injunctive Relief. (Document No. 24.) Plaintiff states that he would have been eligible to be transferred if Defendant had not placed him in segregation in violation of his constitutional rights.

## ANALYSIS

In considering whether to issue an injunction, the District Court must balance the hardships likely to befall the parties if the injunction is, or is not, granted. Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 196 (4th Cir. 1977). Proper balancing of the hardships requires the District Court to weigh the relative importance of four factors:

(1)     the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied;

(2)     the likelihood of harm to the defendant if the requested relief is granted;

(3)     the likelihood that the plaintiff will succeed on the merits; and

(4)     the public interest.

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997) (*quoting* Rum Creek Coal Sales, Inc., v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991)). Consideration of the first two factors is the first step in the analysis. Blackwelder, 550 F.2d at 196. If the District Court concludes that the balance of the potential hardships favors the Plaintiff, then "it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success." Id.

Plaintiff's Motion for Injunctive Relief (Document No. 2.) and Amended Motion for Preliminary Injunction (Document No. 23.) must fail because his allegations cannot support a finding that he has or will suffer irreparable harm or that he will likely succeed on the merits. Following is a discussion of the law applicable to Plaintiff's claims and the nature of the harm which must be shown before a constitutional claim will be deemed to exist and an assessment of the likelihood that Plaintiff will succeed upon them.

A. Plaintiff's Eighth Amendment Claim.

Considering Plaintiff's claims as alleging prohibited punishments under the Eighth Amendment of the United States Constitution, it is clear that the circumstances alleged do not present a viable Eighth Amendment claim. The Eighth Amendment prohibits cruel and unusual punishment. As a general matter, prohibited punishments under the Eighth Amendment include those which involve the "unnecessary and wanton infliction of pain," and conditions that are "grossly disproportionate to the severity of the crime warranting imprisonment." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). The Eighth Amendment "not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Thus, under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment

violation); The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. at 2399; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995), citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990).

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392). "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In Strickler, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") The touchstone is the health and safety of the inmate. Plaintiff in this case must therefore allege in the first place and eventually establish a "sufficiently serious" deprivation of life's necessities and medical care and resulting "serious or

9

significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. To establish the subjective component of deliberate indifference, Plaintiff must allege and prove each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish respecting each Defendant that he or she  "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979.

The Fourth Circuit stated as follows respecting the constitutionality of holding inmates in segregation for long periods of time in In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999), cert. denied by Mickle v. Moore, 528 U.S. 874, 120 S.Ct. 179, 145 L.Ed.2d 151 (1999):

> [T]he isolation inherent in administrative segregation or maximum custody is not itself constitutionally objectionable. Indeed, this court has noted that 'isolation from companionship, restriction on intellectual stimulation[,] and prolonged inactivity, inescapable accompaniments of segregated confinement, will not render [that] confinement unconstitutional absent other illegitimate deprivations.' Sweet [v. South Carolina Dep't of Corrections], 529 F.2d at 861 (internal quotation marks omitted).
>
> Moreover, the indefinite duration of the inmates' segregation does not render it unconstitutional. * * * [L]ength of time is 'simply one consideration among many' in the Eighth Amendment inquiry. Hutto v. Finney, 437 U.S. 678, 687, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); see Sweet, 529 F.2d at 861 - 62. * * * Depression and anxiety are unfortunate concomitants of incarceration; they do not, however, typically constitute the 'extreme deprivations . . . required to make out a conditions-of-confinement claim.' Hudson v. McMillian, 503 U.S. 1, 8 - 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992.) A depressed mental state, without more, does not rise to the level of the 'serious or significant physical or emotional injury' that must be shown to withstand summary judgment on an Eighth Amendment charge. Strickler [v. Walters], 989 F.2d at 1381; see Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990.)

In view of the foregoing authority, Plaintiff clearly does not state facts in support of his

10

Eighth Amendment claim that would entitle him to relief. His allegations do not indicate a sufficiently serious deprivation of life's necessities resulting in serious or significant physical or mental injury or Defendant's deliberate indifference to an excessive risk of harm to him arising from his detention in segregation.[7] Plaintiff's detention in administrative segregation has not been prolonged, and privileges have been available through Plaintiff's attainment of the levels prescribed in MOCC's Quality of Life Program. The undersigned finds that Plaintiff's allegation that he is improperly  detained in administrative segregation does not present a claim of constitutional magnitude under the Eighth Amendment for which relief can be granted.

B. Plaintiff's Claim of Retaliation.

A prison official's retaliation against an inmate for exercising his constitutional right of access to the Court is a constitutional violation cognizable under § 1983. See Hudspeth v. Figgins, 584 F.2d 1345, 1347-48 (4th Cir. 1978), cert. denied, 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979); American Civil Liberties Union of Maryland, Inc. v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993). To prevail on a claim of retaliation, Plaintiff must demonstrate "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 F.2d 227 (1995). Bare assertions of retaliation however, do not rise to the level of a constitutional violation. See Adams, 40 F.3d at 74; White v. White, 886 F.2d 721, 723 (4th Cir. 1989). Plaintiff has not demonstrated any connection between his continuing detention in administrative segregation and his initiation of Court proceedings. Rather, the record clearly reflects

---

[7] Chief Judge Faber reached the same conclusion in a Memorandum Opinion (Document No. 68.) entered on October 26, 2004, in Adkins, et al., v. Painter, et al., Civil Action No. 5:02-1171.

that Plaintiff was designated to and held in administrative segregation based upon his commission of rules violations which occurred after his *habeas corpus* action in the Circuit Court of Fayette County and his § 1983 case in this Court were concluded.

      C. Plaintiff's Due Process Claim.

      Due process is implicated when an inmate is designated to segregation for a prolonged and indefinite period of time. In Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983), the United States Supreme Court found that under State statutes and regulations, inmate Helms had "a protected liberty interest in remaining in the general prison population." Id., 459 U.S. at 470 - 471, 103 S.Ct. at 871. The Supreme Court noted that some process is required when an inmate is place in administrative segregation for a prolonged or indefinite term stating that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate." The Court stated further as follows:

> Prison officials must engage in some sort of periodic review of the confinement of such inmates. This review will not necessarily require that prison officials permit the submission of any additional evidence or statements. The decision . . . will be based on facts relating to a particular prisoner – which will have been ascertained when determining to confine the inmate to administrative segregation – and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for 'proof' in any highly structured manner. * * * [T]he ongoing task of operating the institution will require the prison officials to consider a wide range of administrative considerations . . .

Id. The Supreme Court withdrew from the methodology prescribed by Hewitt focusing upon determining whether the State had created a protected liberty interest in Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).[8] The Supreme Court stated in Sandin that in order to

---

    [8] The Supreme Court clearly indicated in *Sandin* that it was not overruling *Hewitt*. *Sandin*, 515 U.S. at 483 n. 5, 115 S.Ct. at 2300 n. 5.

show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Sandin, 515 U.S. at 483 - 484, 115 S.Ct. at 2300. The Court held that an inmate's confinement in disciplinary segregation for one month did not amount to an atypical and significant hardship in relation to the ordinary incidents of prison life and thus did not establish a liberty interest sufficient to invoke a right to due process entitling the inmate to the procedural protections set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 .Ed.2d 935 (1974). Sandin, 515 U.S. at 487, 115 S.Ct. at 2302. Thus, length of time that segregation is imposed remains a factor which Courts must consider in determining whether conditions are significant and atypical.

Plaintiff does not allege facts in support of his due process claim that would entitle him to relief. First, Plaintiff's allegations do not indicate that his conditions have unexpectedly exceeded his imposed sentence such that due process is implicated. It appears from the record that Plaintiff was properly designated to punitive segregation for rules violations and then to administrative segregation upon the recommendation of the Administrative Segregation Committee. It further appears that Plaintiff was fully apprised of the Committee's recommendation at the time it was made. Second, as found above in the context of Plaintiff's Eighth Amendment claim, Plaintiff's allegations do not evidence an atypical or significant hardship in comparison to those experienced in ordinary prison life and thus do not establish a liberty interest such that a right to due process can be found to exist. Finally, even if a due process right could be found to exist, it is clear from Plaintiff's pleadings that he has utilized prison appeal procedures thereby having the administrative

review of his circumstances.

    D. <u>Plaintiff's Claim of Denial of Access to the Courts.</u>

    It is well-established that inmates have a constitutional right of access to the Courts. <u>Bounds v. Smith</u>, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). This right requires prison authorities "to assist inmates in the preparation and filing of meaningful legal papers by providing them with adequate law libraries or adequate assistance from persons trained in the law." <u>Bounds</u>, 430 U.S. at 828, 97 S.Ct. at 1498.

    The United States Supreme Court discussed the right of prisoners to access to the Courts in <u>Lewis v. Casey</u>, 518 U.S. 343, 116 S.Ct. 2174, 135 L. Ed.2d 606 (1996). Making it perfectly clear that prisoners do not have a right *per se* to a law library or legal assistance, the <u>Lewis</u> Court explained and elaborated upon its earlier decision in <u>Bounds v. Smith</u>, <u>supra</u>, as follows:

> The right that <u>Bounds</u> acknowledged was the (already well-established) right of *access to the courts*. In the cases to which <u>Bounds</u> traced its roots, we had protected that right by prohibiting state prison officials from actively interfering with the inmates' attempts to prepare legal documents, or file them and by requiring state courts to waive filing fees, or transcript fees for indigent inmates. * * * In other words, prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. * * * Insofar as the right vindicated by <u>Bounds</u> is concerned, "meaningful access to the courts is the touchstone," and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the law library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

<u>Lewis</u>, 518 U.S. at 350 - 51, 116 S.Ct. at 2179 - 80. [Emphasis in opinion; citations omitted.]

    It is clear from the <u>Lewis</u> Court's decision that a Complaint alleging deprivation of the right

14

to access to the Courts must include a statement indicating some palpable actual injury. The <u>Lewis</u>

Court stated in its Syllabus as follows:

> [T]o establish a <u>Bounds</u> violation, the actual injury that an inmate must demonstrate
> is that the alleged shortcomings in the prison library or legal assistance program have
> hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.
> This requirement derives ultimately from the doctrine of standing. Although <u>Bounds</u>
> made no mention of an actual injury requirement, it can hardly be thought to have
> eliminated that constitutional prerequisite.

<u>Lewis</u>, 518 U.S. at 343, 116 S.Ct. 2176. The <u>Lewis</u> Court explained further as follows

> . . . <u>Bounds</u> does not guarantee inmates the wherewithal to transform themselves into
> litigating engines capable of filing everything from shareholder derivative actions to
> slip-and-fall claims. The tools it requires to be provided are those that the inmates
> need in order to attack their sentences, directly or collaterally, and in order to
> challenge the conditions of their confinement. Impairment of any other litigating
> capacity is simply one of the incidental (and perfectly constitutional) consequences
> of conviction and incarceration.

<u>Lewis</u>, 518 U.S. at 355, 116 S.Ct. at 2182. Nothing in the record indicates that Defendant has

interfered in any way with Plaintiff's right of access to the Courts. Rather, it appears that Plaintiff

has had free and unobstructed access to the Courts.

Based upon the foregoing, the undersigned finds no evidence that Plaintiff has or will suffer

irreparable harm as he is held in administrative segregation in MOCC's Quality of Life Program.

Finally, from a policy standpoint, Courts recognize that prison officials must have broad discretion

in decision making which potentially affects the safety of inmates and officers administering them.

See <u>Taylor v. Freeman</u>, 34 F.3d 266, 269 (4th Cir. 1994). The undersigned finds no evidence in the

record that Defendant has abused this discretion.

## **PROPOSAL AND RECOMMENDATION**

Accordingly the undersigned hereby respectfully **PROPOSES** that the District Court confirm

and accept the foregoing findings, and **RECOMMENDS** that the District Court **DENY** Plaintiff's

Motion for Injunctive Relief (Document No. 2.) and refer this matter back to the undersigned for consideration of the issues which Defendant raises in his Motion to Dismiss.

Petitioner is notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Chief United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have thirteen days from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841,846 (4th Cir. 1985); United States v. Schonce, 727 F.2d 91,94 (4th Cir. 1984). Copies of such objections shall be sent or otherwise delivered to Chief Judge Faber and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Petitioner who is acting *pro se*.

Date: August 29, 2005.

R. Clarke VanDervort
United States Magistrate Judge